# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51197

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

BYRON KEITH MOORE,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The district court granted Byron Moore's motion to suppress evidence found in a search of his residence. The Government appeals. We REVERSE and REMAND.

## FACTS AND PROCEDURAL BACKGROUND

In April 2014, Temple, Texas police officers executed a search warrant at Byron Moore's residence. In support of the warrant, police submitted the two-page affidavit of David Hess, a Temple police investigator with experience in narcotics crimes. The affidavit listed an address, described the residence at that address, and said the residence was "controlled by" Moore and another

## No. 14-51197

individual.[1] The warrant application sought authorization to search all vehicles and outbuildings located on or around the property. It identified the evidence to be seized as synthetic cannabinoids, also known as the controlled substance "K-2." Hess's affidavit identified both Moore and the other individual as suspected parties, detailed some of Moore's criminal history, and noted that there were security cameras on Moore's property. Moore has twice been convicted of state aggravated assault with a deadly weapon and, at the time of the search, was on parole for one of those offenses. Moore also had a federal conviction for distribution of crack cocaine.

The affidavit described three inspections Hess conducted in late March and April 2014 of trash discarded in a receptacle in a public alley behind the residence, the latest being conducted 72 hours before the magistrate judge approved the warrant application. The motion to suppress challenged the sufficiency of these inspections as support for probable cause for the warrant. These inspections revealed:

- March 26: mail addressed to Moore's residence and several K-2 "roaches," *i.e.,* butts of a cannabis cigarette, in a "sealed" trash bag;

- April 7: a box addressed to one of the suspected parties, a K-2 spice package, and a K-2 roach in a "sealed" trash bag; and

- April 23: mail addressed to Moore or the other suspect and three K-2 roaches contained in a "sealed" trash bag, and a K-2 package.

Police subsequently tested the roaches, all of which were positive for K-2. The affidavit did not include the specific addressee of the mail enclosed in the trash bags, and contained no other information connecting Moore to possession of K-2 or any other current criminal activity at his residence.

---

[1] The other individual listed in the warrant is "Robbie Nett Moore." The warrant does not specify who this individual is or explain her connection to Moore, nor do the parties address that question in their briefs.

2

No. 14-51197

Executing the search warrant, police found $5,000 in cash in a bed post, K-2 in plain view in the residence, and a .40 caliber handgun and rounds of ammunition in a dresser drawer in Moore's bedroom.  Police found another firearm in Moore's son's bedroom.

A federal grand jury indicted Moore on a charge of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Moore pled not guilty and filed a motion to suppress the evidence found during the search of his residence.  After briefing on the issue, the district court granted Moore's motion without a hearing.  The Government timely appealed.

## DISCUSSION

Factual findings in a ruling on a motion to suppress are reviewed for clear error.  *United States v. Cherna*, 184 F.3d 403, 406 (5th Cir. 1999).  Questions of law, such as whether a search warrant was validly issued on probable cause, are subject to a *de novo* standard of review.  *Id.* at 406–07.  The evidence is viewed in the light most favorable to the prevailing party, here, Moore.  *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).

A two-step process is generally used to analyze a district court's decision to grant or deny a motion to suppress based upon the sufficiency of a warrant.  *See Cherna*, 184 F.3d at 407.  First, we decide whether the good faith exception to the exclusionary rule, articulated in *United States v. Leon*, 468 U.S. 897 (1984), is applicable.  *Cherna*, 184 F.3d at 407.  The good faith exception provides that if reliance on a defective warrant is "objectively reasonable," the Fourth Amendment does not require suppression of evidence obtained pursuant to that warrant.  *Leon*, 468 U.S. at 922.

Our analysis usually ends if the good faith exception applies.  *See Cherna*, 184 F.3d at 407.  If good faith does not apply, we proceed to the second step and examine whether the affidavit established probable cause that the

evidence to be seized would be found in the place to be searched, justifying issuance of the warrant. *United States v. Aguirre*, 664 F.3d 606, 613–14 (5th Cir. 2011). Probable cause may be established through "direct observation" or "normal inferences as to where the articles sought would be located." *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). Nothing requires us to stop at a determination of good faith, however, where answering the probable cause question is important to furthering Fourth Amendment jurisprudence. *Leon*, 468 U.S. at 925.

Here, in refusing to apply the good faith exception, the district court said investigator Hess's affidavit was so "bare bones" that it "lack[ed] . . . indicia of probable cause as to render official belief in its existence entirely unreasonable."[2] Bare-bones affidavits are characterized by "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

Specifically, the district court held that the K-2 and the mail addressed to Moore's residence found together in a trash bag were insufficient to show a nexus between the place to be searched and the evidence to be seized. The nexus was broken because the "large trash receptacle [was] accessible to numerous households [and was] situated along a . . . public alleyway." Without an "exclusive link" between the K-2, the trash receptacle, and Moore, the district court held it was unreasonable to rely on the affidavit and, therefore, the search warrant was not supported by probable cause.

In oral argument, the Government conceded that investigator Hess's affidavit was not as clear or thorough as it might have been. For example, the

---

[2] This is one of four situations where the good faith exception will not apply. *See Cherna*, 184 F.3d at 407–08. It is the only one at issue in this appeal.

No. 14-51197

affidavit includes no details about the investigation that caused the trash inspections; the name of the addressee of the mail found in the trash bags with the K-2 is not shown; and importantly, the way the trash bag was "sealed" is unstated. The Government disputed, however, that the affidavit can be fairly characterized as "bare bones." A finding at least of good faith, the Government argued, is appropriate because of the "tight temporal nexus" between the last trash inspection and issuance of the affidavit, and the connection the totality of the information within the affidavit establishes between the evidence to be seized (K-2) and the place to be searched.

We find support for the Government's argument in a case in which a district court upheld the lawfulness of a search of a defendant's residence based on the applicability of the good faith exception. *United States v. Sibley*, 448 F.3d 754, 755–56 (5th Cir. 2006). In *Sibley*, in the affidavit supporting the search warrant, an investigator for the district attorney attested that a drug enforcement agent witnessed an occupant of the defendant's apartment taking garbage bags to his apartment complex's community dumpster. *Id.* at 758. The investigator and agent inspected the bags in the dumpster and found marijuana. *Id.* The investigator further attested that the apartment manager previously reported to police that the complex's maintenance worker found marijuana in trash dumped by occupants of the defendant's apartment, and that the defendant recently had security cameras installed on his property. *Id.* Taking all this information together, we found that "the affidavit connects [the defendant] to the apartment, . . . [occupants of the apartment] to possession of marihuana[,] and the apartment and its occupants to prior drug activity." *Id.* We ruled that the good faith exception applied, and declined to determine whether probable cause existed. *Id.* at 758–59. Though there are distinctions, we conclude that *Sibley* compels application of the good faith exception here.

5

No. 14-51197

As noted above, generally a finding of good faith ends our analysis. We believe it is important, though, to explain why we also disagree with the district court's holding that these facts do not support probable cause.

As in *Sibley*, the trash receptacle in the present case was not on Moore's property and was accessible to a number of individuals besides Moore. *See id.* Unlike *Sibley*, however, Hess conducted several inspections, not just one, of the trash receptacle in a one-month period.[3] The last inspection occurred 72 hours before issuance of the warrant. Temporal proximity between when the information in an affidavit is obtained and the issuance of the warrant is relevant indicia of probable cause. *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). All of these inspections revealed the same evidence: K-2 and mail addressed to Moore's residence together in a trash bag. Further, the affidavit included details about security cameras at the apartment and Moore's previous drug convictions. Those facts corroborated the belief that Moore was engaged in criminal activity at his residence, and are relevant in determining the existence of probable cause. *See Sibley*, 448 F.3d at 758 (security cameras)*; Satterwhite*, 980 F.2d at 322 (criminal history).

The district court was particularly concerned about the size and public accessibility of the trash receptacle, calling it an "exercise of speculation" to guess "as to whom each individual item [in the receptacle] may belong." Those

---

[3] The affidavit here, unlike the one in *Sibley*, did not specify whether Hess observed Moore or the other suspected party place the trash bags into the receptacle. Direct observation, however, is not required. *Freeman*, 685 F.2d at 949 ("[Probable cause] may be established . . . through normal inferences as to where the articles sought would be located."). In *Sibley*, the investigator and agent did not observe the defendants at the residence to be searched but rather connected them to the residence through other information. *Sibley*, 448 F.3d at 758–59. Hess's affidavit similarly utilized other information to connect Moore to the residence (the mail addressed to the suspected parties at the residence), Moore to possession of K-2 (the mail within the same trash bag as K-2), and Moore and his residence to prior drug activity (Moore's criminal history and the security cameras). This, irrespective of direct observation, is sufficient to establish probable cause. *See id.*

6

would be valid concerns if the K-2 and mail were found loose in the trash receptacle, but the items were found together in the trash bags. The meaning of the term "sealed" in the affidavit is unclear. Regardless, affidavits are to be interpreted in "a commonsense" manner. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). It is reasonable to infer that the affidavit meant that the bags were tightly closed in some way, whether by being tied or otherwise, and then were placed into the receptacle. The bags were later recovered and found inside were drugs and mail addressed to Moore's residence. Considering that information in an affidavit must only provide "a fair probability that contraband or evidence of a crime will be found in a particular place," questions about the meaning of "sealed" do not undermine the warrant. *See Aguirre*, 664 F.3d at 610 (citations and quotation marks omitted).

The district court also held that the affidavit was flawed by failing to establish an "exclusive link" between the K-2, the trash receptacle, and Moore. No such "exclusive link" is required. *See id.* Investigator Hess, on three separate occasions, found mail addressed to Moore's residence and K-2 in the same closed trash bag in a receptacle located near Moore's home. "Mail is one of those items that people normally receive and keep at their . . . residence." *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977). It follows that there was a "fair probability" that police would find K-2, the identified evidence to be seized, in Moore's residence, the identified place to be searched. *See Aguirre*, 664 F.3d at 610. The magistrate had a substantial basis for determining probable cause existed, and the search warrant was valid.

We REVERSE the grant of the motion to suppress and REMAND.