**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 16-30468

United States Court of Appeals
Fifth Circuit

**FILED**
February 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GEORGE WILLIAM JARMAN,

Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before JOLLY, SMITH, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

George Jarman conditionally pleaded guilty to the receipt and attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). He challenges the district court's denial of both his motion to suppress evidence obtained in the search of his home and his motion for reconsideration. He contends that the district court erred because: (1) it should not have applied the good faith exception to the exclusionary rule; (2) the search-warrant affidavit for his home does not establish probable cause; and (3) the Government's delay in searching the computers seized from his home violated the Fourth Amendment and Federal Rule of Criminal Procedure 41. Because

No. 16-30468

the good faith exception applies and the Government's post-seizure delay did not violate the Fourth Amendment, we AFFIRM.

I.

The FBI began investigating Jarman when Jason Collins, the co-owner of a computer repair store, called FBI Special Agent ("SA") Larry Jones in November 2007. Collins told SA Jones that he suspected one of his customers had child pornography on his hard drive. He said that the customer had purchased a new computer and asked him to transfer the data from an old computer's hard drive onto it and to wipe the old hard drive clean. Collins's part-time employee, Charlie Wilson, performed the transfer at the customer's home. During the transfer, Wilson, who could see the file names, but not the actual files being copied, noticed file names which appeared to indicate child pornography. Wilson told Collins what he had seen, and Collins asked Wilson to bring the old hard drive back to the store.

Collins inspected that hard drive, finding several file names suggestive of child pornography that he could not open and a video file in the root directory depicting a male performing anal sex on a prepubescent male child. Collins did not tell SA Jones the names of any of the alleged child pornography computer files. But he told SA Jones that he did not believe that the video file had been transferred to the new computer because it was on the hard drive's root directory. At the end of the interview, SA Jones asked Collins to keep the customer's hard drive until the FBI contacted him.

SA Jones requested that an investigation be opened into the allegations, and SA Thomas Tedder was assigned the case. Shortly thereafter, SA Tedder began collaborating with Department of Justice ("DOJ") attorneys on the case.

2

No. 16-30468

In January 2008, SA Tedder re-interviewed Collins. Collins gave SA Tedder the customer's hard drive[1] and told him generally the same story he told SA Jones. This time, however, Collins identified the customer as Jarman. He also provided more detail about the video file he had seen. When he went through the hard drive, Collins explained, he selected one suspected file and copied it to his computer to view. That file contained a grainy image of an adult male sodomizing a pre-pubescent child whom Collins believed to be under the age of twelve. After viewing that file, Collins stopped looking at the drive and contacted the FBI. Notably, Collins now claimed that he believed that Wilson copied all of the old data—including the possible child pornography—to Jarman's new computer, even though he had previously stated that the video file containing possible child pornography was not transferred to the new computer. SA Tedder testified that he asked Collins about this inconsistency and that Collins stood by his new conclusion.

By March 2008, DOJ prosecutor Michael Yoon and SA Tedder had begun drafting a search-warrant affidavit for Jarman's home. While Yoon did most of the drafting, SA Tedder corrected misunderstandings of fact and revised language at least once.

As of late March 2008, SA Tedder was aware of two investigations by U.S. Immigration and Customs Enforcement ("ICE") that implicated Jarman. In the first investigation, which concerned the child pornography site "illegal.CP," ICE obtained Jarman's email address when it acquired the email addresses of those who had purchased access to the website. In the second

---

[1] The district court suppressed the evidence found on this hard drive, holding that "the government's yearlong, warrantless seizure of [it] was unreasonable, and thus, violated the Fourth Amendment." Because that ruling is not challenged on appeal, we do not discuss facts specifically relevant to that issue; we address only the court's rulings on the suppression of evidence acquired in a search of Jarman's home pursuant to a warrant, which are explained below.

investigation, which concerned the child pornography site "Home Collection," ICE determined that Jarman purchased subscriptions to three child pornography sites in seven transactions from October 2006 to January 2007.

SA Tedder testified that he talked to ICE agents about these investigations and reviewed all of the relevant evidence to ensure that the screen captures ICE took from these websites were of prepubescent children and that Jarman was, in fact, the person identified in the investigations. Moreover, he served a subpoena on Cox Communications to confirm that the email address that ICE tied to Jarman's home was an active account belonging to Jarman. However, SA Tedder testified that he did not have any direct knowledge that Jarman actually downloaded files from these child pornography sites when drafting the search-warrant affidavit.

In December 2008, SA Tedder submitted a search-warrant affidavit for Jarman's home. A magistrate judge signed the search warrant on December 5th. Three days later, the FBI executed the warrant, seizing several hard drives and computers from Jarman's home.

Because Jarman was an attorney, the FBI used a "taint process" to review the seized data. In this process, a "taint team," which consisted of a DOJ attorney and a FBI computer expert, initially screened the seized data for any potentially privileged material before turning it over to the prosecution team. The taint team reported the results of their review on August 6, 2009.

The prosecution team received the hard drives and computers from the taint team on September 2, 2009, and July 9, 2010, and the Computer Analysis Response Team ("CART") began its forensic examination. CART completed its examination on November 5, 2010, and reported that it found "sexually explicit images and videos of minors on the computer hardware."

A grand jury subsequently charged Jarman with, among other things, the receipt and attempted receipt of child pornography ("Count 1").

No. 16-30468

In September 2013, Jarman moved to suppress the fruits of the search of his home and for a *Franks* hearing, arguing that SA Tedder's affidavit did not establish probable cause, omitted material information, and contained misrepresentations and unreliable information. The district court held a *Franks* hearing in April 2014. Jarman then sought, and was granted, additional discovery because, the court found, there were material inconsistencies between SA Tedder's testimony and his draft affidavits.

In October 2014, the district court denied Jarman's motion to suppress. Because of the effect of the passage of time on one's memory, the court found, SA Tedder's incorrect statements at the *Franks* hearing were not deliberate. Moreover, the Government's actions did not give rise to a reckless disregard for the truth. Consequently, the court held that, although the "investigation may have been less than ideal," "the good faith exception [to the exclusionary rule] applies."

Jarman promptly moved for reconsideration and for a second *Franks* hearing. The district court granted a second *Franks* hearing in May 2015. But, in August 2015, the court denied the motion for reconsideration on the ground that the good faith exception still applied. Although it "remain[ed] uncomfortable with the [G]overnment's conduct," the court still did "not believe that Jarman ha[d] established that [SA] Tedder's conduct was in bad faith."

Jarman then conditionally pleaded guilty to Count 1 of the indictment, reserving the right to appeal the denial of his motions to suppress the evidence found in the search of his home.

Now on appeal, Jarman asserts that the district court erred by denying his motions to suppress and for reconsideration because: (1) the good faith exception is inapplicable; (2) SA Tedder's affidavit does not establish probable cause; and (3) the Government's delay in searching the data from his home violated the Fourth Amendment and Federal Rule of Criminal Procedure 41.

No. 16-30468

II.

This Court reviews the "[f]actual findings in a ruling on a motion to suppress . . . for clear error" and questions of law de novo. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (citation omitted). "The clearly erroneous standard is particularly deferential where, as here, denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (citation omitted). But "the constitutionality of law enforcement action" and the "determination of the reasonableness of a law enforcement officer's reliance upon a warrant issued by a magistrate . . . for purposes of determining the applicability of the good-faith exception to the exclusionary rule" are questions of law that are reviewed de novo. *United States v. Cherna*, 184 F.3d 403, 406–07 (5th Cir. 1999). Nevertheless, "[t]he evidence is viewed in the light most favorable to the prevailing party, here," the Government. *Moore*, 805 F.3d at 593 (citation omitted).

This Court "generally review[s] the denial of a motion to reconsider for abuse of discretion." *United States v. Rabhan*, 540 F.3d 344, 346 (5th Cir. 2008) (citation omitted).

We hold that the district court did not err in denying suppression of the evidence the Government seized from Jarman's home because: (1) Jarman failed to carry his burden to show that the good faith exception does not apply; and (2) Jarman was not entitled to suppression based on the Government's delay in completing its search of the evidence because: (a) Jarman waived the claim that the Government violated Rule 41; and (b) the Government did not violate the Fourth Amendment because it acted reasonably under the circumstances.

6

No. 16-30468

A.

We begin by considering whether the district court erred by applying the good faith exception. *Moore*, 805 F.3d at 593 (citation omitted).

The good faith exception bars the application of the exclusionary rule to exclude evidence obtained pursuant to a warrant if law enforcement officers act under an objectively reasonable, good faith belief that the search warrant in question is valid—even if it, in fact, is not. *Robinson*, 741 F.3d at 594 (citation omitted). But the good faith exception is not applicable if "the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005) (citation omitted). "[T]he initial burden here is upon the defendant." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002). Here, in attempting to impeach the warrant, the defendant must establish: (1) "a knowing or reckless falsehood" by omission or commission; (2) "that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant"; and that (3) "[t]he omitted material [is] . . . dispositive, so that if the omitted fact were included, there would not be probable cause." *Robinson*, 741 F.3d at 595 (citations omitted); *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000).

Jarman avers that the district court erred in holding that the good faith exception applies, challenging more than a dozen statements in and omissions from the search-warrant affidavit for his home.[2] The Government, on the other

---

[2] Specifically, Jarman asserts that the good faith exception does not apply because SA Tedder: (1) made false statements at the *Franks* hearings; (2) falsely stated in the search-warrant affidavit that members of the taint team would not be involved in the investigation when Yoon was involved with both; (3) made a false statement when he swore to the affidavit and led the magistrate to believe that he had sufficiently corroborated and verified the information in it; (4) acted in bad faith when he described child-pornography offenders' characteristics in the affidavit and asserted and relied upon the nexus between them and the assertion that Jarman likely hoarded child pornography; (5) included file names in the

hand, argues that the district court correctly held that the good faith exception applies because Jarman has not shown that any statements in the affidavit were knowingly or recklessly false. Moreover, the Government asserts, Jarman has not identified any material omissions from the affidavit, let alone any omissions constituting knowing or reckless falsehoods.

The district court heard all of the evidence and received extensive briefing. The court then found that Jarman failed to satisfy the requirements for attacking the good faith exception because, it determined, the Government and SA Tedder did not act in bad faith and the statements and omissions that Jarman calls material knowing or reckless falsehoods and omissions were neither deliberate nor made in reckless disregard for the truth. After hearing oral argument and studying the briefs, applicable parts of the record, and the relevant law, we can find no error in the district court's application of the good faith exception. We especially recognize that the district court had the opportunity to observe witnesses. *Robinson*, 741 F.3d at 594 (citation omitted).

---

affidavit that he had no basis for including; (6) should not have implied in the affidavit that Collins easily selected one file and observed the grainy image of an adult male sodomizing a male child; (7) deliberately inserted in the affidavit the false statement that "[p]er JARMAN's request, all data from the old computer, to include the files depicting suspected child pornography, was transferred over to the new computer at JARMAN'S residence"; (8) knowingly and recklessly inserted in the affidavit the false statement that "Jarman retained image**s** of child pornography from October 2006 to November 2007 on the computer located at his residence"; (9) did not mention in the affidavit that accessing or viewing child pornography was not illegal before October 2008 or that the inadvertent downloading of child pornography into temporary internet files did not necessarily constitute possession; (10) did not mention in the affidavit that: (a) there was no evidence that Jarman accessed or downloaded child pornography; (b) there was nothing showing that Jarman's home computers were linked to child pornography; and (c) the illegal.CP subscription information was not associated with Jarman's home; (11) made a false statement by swearing to the affidavit without explaining that Yoon drafted most of it; (12) showed a reckless disregard for the truth by re-interviewing Collins instead of interviewing Wilson and at least recklessly omitted any mention of SA Jones's initial interview of Collins and Collins's initial statement regarding what data was transferred; and (13) at least recklessly failed to include in the affidavit the facts that Collins only found a single, grainy image of child pornography in the root directory and that the only suggestive file names Collins saw were located in temporary internet files that were not viewable.

No. 16-30468

Furthermore, evidence must be "viewed in the light most favorable to the" Government. *See Moore*, 805 F.3d at 593 (citation omitted).  We thus uphold the application of the good faith exception to any defects alleged by Jarman.

B.

We now turn to Jarman's contention that the district court erred by rejecting his argument that the duration of the Government's post-seizure review of his computer data requires the suppression of the seized evidence. The district court did not explicitly rule on this issue as it relates to the evidence that is the subject of the warrant.  The court, however, necessarily rejected this claim when it denied Jarman's motions to suppress.  And "this court may . . . independently review the record to determine whether the district court's decision is supported by any reasonable review of the evidence." *United States v. Santiago*, 410 F.3d 193, 198 (5th Cir. 2005) (citation omitted).

"The general touchstone of reasonableness which governs [the] Fourth Amendment analysis . . . governs the method of execution of the warrant." *E.g.*, *United States v. Ramirez*, 523 U.S. 65, 71 (1998).  As "many circuits have recognized," the Fourth Amendment "contain[s no] requirements about *when* the search or seizure is to occur or the *duration.*"  *United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F. 2013) (citation omitted); *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993).  Courts have therefore consistently "permitted some delay in the execution of search warrants involving computers because of the complexity of the search" and they often restrict their "analysis of the delay in executing . . . warrants [to] consider[ing] only whether the delay rendered the warrants stale."  *E.g., United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005).

Jarman contends that the district court erred by not granting suppression because the Government violated the Fourth Amendment and Federal Rule of Criminal Procedure 41 by taking twenty-three months to finish

No. 16-30468

searching the data it seized. His overarching argument is that this delay was unreasonable.

The Government counters that Jarman is not entitled to suppression on this basis. Jarman, the Government asserts, waived the claim that its actions violated Rule 41. Moreover, the Government argues, it acted reasonably under the circumstances, and the only case Jarman relies upon, *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), is distinguishable.

We hold that the district court did not err by not granting suppression based on the duration of the Government's post-seizure review of the data it seized from Jarman's home. First, Jarman waived the claim that the Government's actions violated Rule 41 because he merely mentions the issue in a footnote with little or no argument. *See United States v. Scroggins*, 599 F.3d 433, 447–48 (5th Cir. 2010) (citation omitted) (summarizing this Court's appellate briefing requirements).

Second, Jarman is not entitled to suppression under the Fourth Amendment because the duration of the Government's review of the seized data was reasonable under the circumstances. The taint process here was designed to protect Jarman's clients' privileged information. Courts have recognized that, in such circumstances, it is appropriate to screen privileged information. *See, e.g.*, *Metter*, 860 F. Supp. 2d at 215. Moreover, the taint team review only took eight months. And the Government completed its forensic examination less than four months after it received the last of the hard drives and computers from the taint team. These periods are within the typical periods of delay in executing warrants that courts have permitted due to the complexity involved in searching computers. *See, e.g.*, *Syphers*, 426 F.3d at 469.

Moreover, Jarman has not argued that the delay caused the warrant to become stale. Even if he had, "[n]umerous cases hold that a delay of several

10

months" or even years "between the seizure of electronic evidence and the completion of the government's review of [it] . . . is reasonable" and does not render the warrant stale, especially in child-pornography cases. *Metter*, 860 F. Supp. 2d at 215 (emphasis omitted).[3]

Additionally, the one case Jarman relies upon—an out-of-circuit district court opinion—is inapposite. In *Metter*, the Government had not even begun to "conduct[] its [privilege] review of the [electronic] evidence seized" fifteen months after the warrant was executed and had "no plans whatsoever to *begin* review of that data." *Metter*, 860 F. Supp. 2d at 211, 215. Here, by contrast, the Government completed its privilege review in eight months. Then, by the end of twenty-three months, it completed its entire review of the evidence. Further, in *Metter*, the court found that the Government displayed a "lack of good faith" because it "failed to commence the review [of the evidence], despite repeated requests from defense counsel and directions from the Court to do so," and it "indicate[d] that it had no intention of fulfilling its obligations" to do so. *Id.* at 216. Here, however, Jarman does not accuse the Government of similarly acting in bad faith. Thus, Jarman is not entitled to suppression based on the duration of the Government's post-seizure review of his computer data.

---

[3] *Accord, e.g.*, *United States v. Kleinkauf*, 487 F. App'x 836, 838–39 (5th Cir. 2012) (finding that a nine-month delay did not render information stale); *United States v. Allen*, 625 F.3d 830, 842–43 (5th Cir. 2010) (finding that an eighteen-month delay did not render information stale); *United States v. Frechette*, 583 F.3d 374, 378–79 (6th Cir. 2009) (finding that a sixteen-month delay did not render information stale); *United States v. Morales–Aldahondo,* 524 F.3d 115, 119 (1st Cir. 2008) (finding that a three-year delay did not render information stale); *Syphers*, 426 F.3d at 469 (finding that a five-month delay was reasonable); *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005) (finding that a five-year delay did not render information stale); *United States v. Newsom,* 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law."); *United States v. Gorrell*, 360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004) (finding that a ten-month delay was reasonable).

No. 16-30468

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.