COURT OF APPEALS
DECISION
DATED AND FILED

October 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP517-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2014CF1163

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN A. PLENCNER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: MICHAEL J. PIONTEK, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 REILLY, P.J. Brian A. Plencner appeals from a judgment convicting him of two counts of possession of child pornography and from an order denying his postconviction motion. Plencner argues he was denied the effective assistance of counsel, as his attorneys failed to challenge the search and

seizure of his property as unreasonable under the Fourth Amendment. Plencner also argues that the circuit court erred in denying him a ***Machner***[1] hearing on his postconviction motion. As Plencner fails to establish that his trial counsel was ineffective, we affirm.

*Background*

¶2 Plencner came to the attention of law enforcement when his fifteen-year-old stepdaughter reported that he sexually assaulted her. That investigation was commenced by Brad Spiegelhoff with the Racine Police Department on March 29, 2010.[2] Plencner's stepdaughter told police that she had also observed Plencner "watching pornography on his computer and believed it may have been child pornography." Officers executed a search warrant the next day, seizing a laptop computer, a computer tower, three computer hard drives, a digital camera, a cellphone, a docking station, and zip disks. After a "preview revealed 'apparent images of child pornography,'" these items were sent to the Wisconsin Department of Justice Division of Criminal Investigation (DCI) for further analysis on April 8, 2010.

¶3 On April 14, 2010, Plencner's then-attorney sent a letter to the assistant district attorney requesting that his property be returned to him, to no avail. On May 13, 2010, Spiegelhoff went to DCI and received a preview disk from Plencner's computer, reporting that DCI "stated that it would be weeks to

---

[1] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A ***Machner*** hearing addresses a defendant's ineffective assistance of counsel claim.

[2] Plencner was ultimately charged with second-degree sexual assault of an unconscious victim in case No. 2010CF464 and pled no contest in August 2010. The circuit court placed Plencner on probation for eight years with ten months' condition time.

months before they were able to get a full evidentiary look at the items brought to DCI."[3]

¶4    In August 2011, after completing his condition time in case No. 2010CF464, Plencner made another request by e-mail to Spiegelhoff to have the seized items returned.[4]  Spiegelhoff responded that "[t]hey are still up there [at DCI] and if the [district attorney] tells us to turn them over, then I guess we will have to go get them.  Otherwise, DCI is still processing them.  It takes over a year to get through it all."

¶5    Two years later, on September 9, 2013, DCI informed Spiegelhoff that a preview revealed child pornography on Plencner's computer and requested that Spiegelhoff procure a new warrant "under the circumstances."[5]  Spiegelhoff consulted with the district attorney's office, who advised him to "seek another warrant to continue the final exam of the evidence," and submitted a new search warrant affidavit, stating "almost the exact same thing that was contained in the original warrant … back in 2010" and also that the computer specialist had "just started working" on the case after it was assigned "to at least two other specialists

---

[3] The State filed an other-acts motion to admit evidence of images from the computer in case No. 2010CF464, but the case did not go to trial.

[4] Plencner never requested the return of his property pursuant to WIS. STAT. § 968.20, which provides in part that "[a]ny person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant … may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned."  Sec. 968.20(1).  He argues, however, that that fact should not influence our analysis as this court explained in *State v. Gant*, 2015 WI App 83, ¶14 n.4, 365 Wis. 2d 510, 872 N.W.2d 137, that "we do not hold, impliedly or otherwise, that Gant's only avenue to retrieve his property is found in § 968.20(1)."

[5] DCI also told Spiegelhoff that "the case went through several specialists in its time it was at the Madison DCI office" and that "several of the specialists that received this case retired or went to a different job shortly after, and never did the actual review."

who left DCI." The new warrant was issued by Judge Gerald Ptacek on September 24, 2013, and DCI thereafter informed the investigating officer that he located child pornography on one of Plencner's hard drives on December 11, 2013.

¶6      Plencner was charged with five counts of possession of child pornography. Trial counsel filed two motions to dismiss the case. The first arguing that the "delay in the commencement" of criminal proceedings and the staleness of the warrant violated Plencner's constitutional rights.[6] At the motion hearing, the circuit court expressed its concern under the circumstances "[f]rom a fairness standpoint." It explained that "it seems totally unfair to have a defendant charged with a sexual assault back in 2010, be sentenced on that, and I'm assuming … that the Court considered something about what was on the computer, because there was [an other] acts request during the pendency of that action which referred to child pornography." The court withheld a ruling on the motion, concluding that it could not find actual prejudice required to determine

_____

[6] Plencner's motion to dismiss was brought "on the grounds that the State's precharging delay violated the rights guaranteed by the 4th, 5th, 6th, and 14th Amendments to the United States Constitution; article I, sections 7, 8, and 11 of the Wisconsin Constitution; and *State v. Wilson*, 149 Wis. 2d 878, 904-05, 440 N.W.2d 534 (1989)." *Wilson* involved a "sixteen-year delay between the date of the alleged offense and the filing of the criminal complaint" and whether that delay "violated the defendant's right to due process." *Wilson*, 149 Wis. 2d at 884. Our supreme court explained that "[w]here a defendant seeks to avoid prosecution based upon prosecutorial delay, it is clear that it must be shown that the defendant has suffered actual prejudice arising from the delay and that the delay arose from an improper motive or purpose such as to gain a tactical advantage over the accused." *Id.* at 904. There, the court assumed without deciding that the defendant was actually prejudiced by the delay, but concluded that the delay was not the result of an improper motive or purpose as the delay was a result of insufficient evidence. *Id.* at 905-06. Trial counsel, in this case, argued that the State knew of the alleged child pornography "at the time of the initial offense"—the sexual assault—and that "[t]his information implies an improper motive" and Plencner would be "unfairly prejudiced by this delay" as "the court was already informed about the alleged possession, and now the issue will be considered again for sentencing purposes."

that a delay in charging was unconstitutional, but asked counsel to "revisit that issue." Counsel filed a second motion to dismiss, arguing that Plencner suffered actual prejudice from the delay, "specifically through the disjointed chain of custody of the evidence," and, again, that the information contained in the 2013 warrant was stale. The circuit court denied the motion as it found no prejudice.[7]

¶7 Plencner pled no contest to two counts of possession of child pornography. He was sentenced to three years' initial confinement and two years' extended supervision on each count, to be served consecutively.[8] Plencner filed a postconviction motion, arguing that "trial counsel rendered constitutionally ineffective assistance by failing to pursue suppression of the evidence based on the length of time that the police held [Plencner's] computer." The circuit court denied the motion without a hearing, stating that counsel's prior motions "contained essentially the same arguments" as presented in the postconviction motion.[9] Plencner appeals.

---

[7] At that hearing, the State addressed the circuit court's previous suggestion that the child pornography had been considered in case No. 2010CF464, noting that there was no agreement by the State that it would not issue charges on the child pornography, the child pornography was not mentioned in the PSI, it was only mentioned by the State in passing at sentencing, and it was not referenced by the sentencing court.

[8] Plencner was represented by new counsel at his sentencing hearing. Although Plencner argues that both trial counsel and sentencing counsel were ineffective, his argument is the same for each. For ease of reading, we will simply refer to "trial counsel" throughout.

[9] Plencner filed a supplemental motion for postconviction relief, seeking twelve days of sentence credit and reconsideration of his original postconviction motion. The court denied reconsideration but granted the motion for sentence credit.

*Standard of Review*

¶8      Plencner argues that his trial counsel was ineffective for failing to move to suppress the evidence of child pornography found on his computer and that it was error for the court to have denied him a ***Machner*** hearing on his ineffective assistance of counsel claim.

¶9      Plencner is not automatically entitled to a ***Machner*** hearing on his postconviction motion.  "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." ***State v. Allen***, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.  Whether a motion raises sufficient facts is a question of law we review de novo. ***Id.***, ¶9.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." ***Id.***  We review the court's decision for an erroneous exercise of discretion. ***Id.***  Thus, in order for Plencner to be entitled to a ***Machner*** hearing on his motion, he must state sufficient material facts demonstrating that he received ineffective assistance of counsel.

¶10     The standard by which we review a claim of ineffective assistance of counsel is well known and often repeated:  the defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984); ***State v. Thiel***, 2003 WI 111, ¶¶18-20, 264 Wis. 2d 571, 665 N.W.2d 305.  Both deficient performance and prejudice present a mixed question of fact and law. ***Thiel***, 264 Wis. 2d 571, ¶21.  We uphold the circuit court's findings of fact unless clearly erroneous. ***Id.***  "Whether counsel's performance satisfies the constitutional

standard for ineffective assistance of counsel is a question of law, which we review de novo." ***Id.***

¶11 To establish deficient performance, the defendant must demonstrate that counsel's "acts or omissions were outside the wide range of professionally competent assistance" and were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687, 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Id.*** at 689. "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." ***Thiel***, 264 Wis. 2d 571, ¶19. Importantly, counsel is not deficient for failing to object and "argue a point of law that is unclear." ***State v. Maloney***, 2005 WI 74, ¶¶23, 26, 281 Wis. 2d 595, 698 N.W.2d 583 (quoting ***State v. Thayer***, 2001 WI App 51, ¶14, 241 Wis. 2d 417, 626 N.W.2d 811). To establish prejudice, the defendant must demonstrate that counsel's errors were "of such magnitude that there is a reasonable probability that, absent the error, 'the result of the proceeding would have been different.'" ***State v. Erickson***, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999) (quoting ***Strickland***, 466 U.S. at 694). We need not address both prongs of the test if the defendant fails to prove one. *See **Strickland***, 466 U.S. at 697.

*Discussion*

¶12 The posture of this case is integral to the result we reach on appeal. The crux of Plencner's argument is that trial counsel raised the wrong claims before the circuit court. Trial counsel's motion to dismiss argued that the State's delay in charging Plencner violated his due process rights and that the information

supporting the 2013 warrant was stale. Plencner now argues that counsel should have filed a motion to suppress the evidence, as the duration of the seizure of his computer was unreasonable under the Fourth Amendment. For the reasons that follow, we disagree that Plencner's trial counsel performed deficiently.

¶13 In support of his position that trial counsel should have sought suppression of the child pornography evidence, Plencner cites to two United States Supreme Court decisions, *United States v. Place*, 462 U.S. 696 (1983), and *Segura v. United States*, 468 U.S. 796 (1984). These cases, he argues, stand for the proposition that law enforcement must diligently pursue its investigation and that the duration of a seizure is relevant to assessing the reasonableness of the seizure. In *Place*, law enforcement detained the defendant at the airport and seized the defendant's luggage for ninety minutes while waiting for a narcotics detection dog to do a "sniff test." *Place*, 462 U.S. at 699. The dog reacted positively to one of the bags, but agents retained the luggage all weekend and obtained a search warrant on Monday morning. *Id.* The Court concluded that although the Fourth Amendment allows the temporary detention of personal luggage for a "sniff test" based on reasonable suspicion, the ninety-minute seizure of the luggage "on less than probable cause" was unreasonable under the Fourth Amendment. *Id.* at 697-98, 709-10.

¶14 In *Segura*, agents had probable cause to believe residents of an apartment were dealing drugs, and agents entered and remained in the apartment "throughout the night and into the next day" until a search warrant was obtained. *Segura*, 468 U.S. at 799-801, 812. The court applied the independent source doctrine, finding that the unlawful entry—unlawful as officers lacked a warrant or exigent circumstances—"did not contribute in any way to discovery of the evidence seized under the warrant." *Id.* at 815. The Court also held that the

8

nineteen-hour delay in securing the warrant was not unreasonable under the circumstances. *Id.* at 812-13.

¶15 Plencner also identifies *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012), calling it "instructive" for its Fourth Amendment analysis. There, the issue was whether a "six-day delay in securing a warrant render[ed] the seizure of Burgard's phone unreasonable for purposes of the Fourth Amendment." *Id.* at 1031. The court explained that "[t]here is unfortunately no bright line past which a delay becomes unreasonable. Instead, the Supreme Court has dictated that courts must assess the reasonableness of a seizure by weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1033 (quoting *Place*, 462 U.S. at 703). The court determined that the six-day delay was not unreasonable. While acknowledging that the case contained "police imperfection," the court concluded the "delay was not the result of complete abdication of his work or failure to 'see any urgency.'" *Id.* at 1034 (citation omitted).

¶16 And finally, Plencner cites to this court's decision in *State v. Gant*, 2015 WI App 83, ¶¶4, 14, 365 Wis. 2d 510, 872 N.W.2d 137, where we assumed without deciding that a ten-month delay in securing a warrant after seizing a computer made the seizure unlawful. Police were called to Gant's home due to the death of his wife. *Id.*, ¶2. The death was thought to be a suicide, but police procedures required any apparent suicide to be handled as a homicide. *Id.*, ¶¶2-3. Police collected evidence at the scene, including three computers. *Id.*, ¶3. After his wife's death was officially ruled a suicide, Gant twice requested his property be returned, but it remained at the Police Administration Building. *Id.*, ¶¶3-4. Ultimately, as a result of charges being filed against Gant for child sex crimes and

9

the discovery of child pornography on computer disks found at Gant's home, the investigating officer applied for a search warrant for the computers ten months after they were seized. *Id.*, ¶¶5-7. Gant filed an unsuccessful motion to suppress the evidence and pled guilty to ten counts of child pornography. *Id.*, ¶10. This court concluded that the motion to suppress was properly denied as, although the ten-month delay in applying for the warrant was unlawful, the independent source and the attenuation doctrines applied to allow admission of the evidence. *Id.*, ¶¶16-21.

¶17 The cases Plencner presents are not on point. None of the cases he relies on address the constitutional ramifications of a delay in searching an item of personal property, specifically a computer or computer components, seized pursuant to a valid warrant. Instead, each of the cases identified by Plencner involve a seizure, either based on reasonable suspicion or probable cause, and a resulting delay in obtaining a necessary warrant. Plencner has not identified any controlling authority in support of a motion to suppress based on the factual scenario presented before us, arguing only that it is "hardly novel that the reasonableness of a seizure under the Fourth Amendment includes consideration of the duration of the seizure." As the State argues, there is no controlling authority in Wisconsin applicable under these circumstances. Thus, the State argues that Plencner's claim for suppression is based on unclear or unsettled law and that trial counsel cannot be faulted for failing to advance it.

¶18 The unsettled nature of the issue in this case is clear as Plencner and the State both advocate for a different test. Plencner argues that the balancing test from *Place* should apply. That test requires the court to consider the reasonableness of the seizure by "balance[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance

10

of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703; *see also Segura*, 468 U.S. at 812 ("[A] seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons."). The State, in contrast, argues that the *Place* test is not applicable where law enforcement delays executing a search of a computer seized pursuant to a valid warrant. Instead, the State advocates for the analysis used by courts in other jurisdictions, which focuses on whether law enforcement's delay in searching rendered the probable cause supporting the warrant stale.

¶19 In *United States v. Jarman*, 847 F.3d 259, 263, 266 (5th Cir. 2017), a child pornography case involving seizure of hard drives and a computer, the defendant argued that the court erred in refusing to grant suppression for violating the Fourth Amendment by taking twenty-three months to complete a search of the data it seized. According to the United States Fifth Circuit Court of Appeals, courts addressing this issue have "consistently 'permitted some delay in the execution of search warrants involving computers because of the complexity of the search' and they often restrict their 'analysis of the delay in executing … warrants [to] consider[ing] only whether the delay rendered the warrants stale.'" *Id.* at 266 (alterations in original) (citing *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)). Although the court noted that Jarman had not argued that the delay caused the warrant to become stale, it found that "'[n]umerous cases hold that a delay of several months' or even years 'between the seizure of electronic evidence and the completion of the government's review of [it] … is reasonable' and does not

render the warrant stale, especially in child-pornography cases."[10] *Jarman*, 847 F.3d at 267 & n.3 (alternations in original; collecting cases).

¶20 Here, because this case comes before us on an ineffective assistance of counsel claim, we need not reach the issue of what standard we should apply. It is sufficient for us to conclude that the issue raised in this case is unsettled or unclear. As our supreme court explained, "[c]ounsel's failure to raise [a] novel argument does not render his [or her] performance constitutionally ineffective." *State v. Lemberger*, 2017 WI 39, ¶18, 374 Wis. 2d 617, 893 N.W.2d 232 (first and second alterations in original; citation omitted). "While the Constitution guarantees criminal defendants a competent attorney, it 'does not [ensure] that defense counsel will recognize and raise every conceivable constitutional claim,'" and "failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of

---

[10] In the context of child pornography cases, the question of staleness has been called "unique." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (citation omitted). This is because "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010) (citation omitted; collecting cases); *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) ("Collectors act like 'pack rats' because they have difficulty obtaining images of child pornography. As such, they are inclined to download and keep such images for a long period of time, and they 'rarely, if ever, dispose of their sexually explicit materials.'"); *see also United States v. Carroll*, 750 F.3d 700, 704-05 (7th Cir. 2014) (collecting cases); *State v. Gralinski*, 2007 WI App 233, ¶¶30-31, 306 Wis. 2d 101, 743 N.W.2d 448 (discussing that the warrant "affidavit provided 'that individuals who are involved with child pornography are unlikely to ever voluntarily dispose of the images they possess, as those images are viewed as prized and valuable materials'"). Further, because the evidence is contained in a digital format, the files remain for a long time and can sometimes be recovered even after being deleted. *See Richardson*, 607 F.3d at 370-71; *see also United States v. Seiver*, 692 F.3d 774, 775-78 (7th Cir. 2012) ("'Staleness' is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but rarely relevant when it is a computer file.").

professionally competent assistance' sufficient to satisfy the Sixth Amendment." *Id.* (citations omitted).

¶21 Under the circumstances of this case, it is clear that counsel did not perform deficiently. Trial counsel did not fail to bring a claim challenging the delay in searching Plencner's computer. Trial counsel launched an active assault against the continuation of this case based on violations of Plencner's constitutional rights and also argued in both motions that the 2013 warrant was stale. The motion to dismiss included a Fourth Amendment claim, *see supra* note 6, and while an argument was not developed, it demonstrates at a minimum that counsel made a choice as to what to argue among alternatives. Trial counsel did not fail in her duty and did not perform deficiently. Regardless of the type of motion trial counsel brought, the challenge was the same: the delay in searching Plencner's computer violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Given our duty to review ineffective assistance of counsel claims under a "highly deferential" standard and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," trial counsel did not perform deficiently. *See **Strickland***, 466 U.S. at 689.

¶22 Alternatively, even if we were to conclude that the law in this area is not unsettled, we cannot say that Plencner would succeed on the merits. If, as the State argues, the standard we are to apply is whether the delay in searching rendered the warrant stale, trial counsel cannot be found ineffective as she advanced a staleness challenge to the 2013 warrant in the motions to dismiss. The

circuit court held that the probable cause supporting the warrant was not stale.[11] Plencner does not challenge that conclusion on appeal. Plencner never argued before the circuit court or this court that either warrant was invalid for a lack of probable cause. The delay in analyzing the computer did not impact the probable cause determination. On the day the evidence was seized from Plencner's home, a "preview revealed 'apparent images of child pornography.'" The computer was stored at DCI in the custody of law enforcement for the entire duration. Due to the nature of the evidence being electronic data, the evidence was as probable to be found in 2010 as it was in 2013.

¶23    If, as Plencner argues, the *Place* balancing test applies, we agree with the State that Plencner has not sufficiently established that the test would resolve in his favor. The test in *Place* indicates that we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion" to determine whether the seizure was reasonable. *Place*, 462 U.S. at 703. Plencner clearly has a possessory interest in his computers and hard drives. In considering the strength of his interest, we note that Plencner asked for his

---

[11] Our supreme court explained it *State v. Multaler*, 2002 WI 35, ¶¶37-38, 252 Wis. 2d 54, 643 N.W.2d 437:

> The probable cause determination in the face of a staleness challenge depends upon the nature of the underlying circumstances, whether the activity is of a protracted or continuous nature, the nature of the criminal activity under investigation, and the nature of what is being sought. *State v. Ehnert*, 160 Wis. 2d 464, 469-70, 466 N.W.2d 237 (Ct. App. 1991).

"Even old information can support probable cause." *Gralinski*, 306 Wis. 2d 101, ¶27; *see also State v. Moley*, 171 Wis. 2d 207, 212-14, 490 N.W.2d 764 (Ct. App. 1992) ("The allegedly stale information does not necessarily lead to stale probable cause.").

property back twice and was denied, suggesting his interest, and the resulting intrusion, was significant. *Cf. United States v. Stabile*, 633 F.3d 219, 235-36 (3d Cir. 2011) ("[D]efendants who 'never sought return of the property' cannot argue that delay adversely affected Fourth Amendment rights." (citation omitted)).

¶24 The State argues, however, that Plencner's possessory interests were "reduced" due to his conviction in case No. 2010CF464, which left him confined for ten months, followed by eight years of probation and conditions of probation prohibiting him from "owning or using a computer or any electronic equipment which has the capability to access the Internet without prior agent approval." We agree that Plencner's incarceration and conditions of probation are factors to be weighed. *See Segura*, 468 U.S. at 812 (noting that "the proprietors of the apartment were in the custody of the officers throughout the period in question" in determining that a delay in obtaining a warrant was reasonable); *United States v. Schaffer*, No. 13-183, 2017 U.S. Dist. LEXIS 26257 at *10-11 (D.N.J. Feb. 24, 2017) ("[A]ny possessory interest Defendant had in the electronic devices was greatly reduced by the fact that he has been incarcerated ever since the execution of the … search warrant.").

¶25 In contrast, the government's interest in this case was substantial. There is no question that the investigation and prevention of the exploitation of children is of the upmost importance. *See State v. Bruckner*, 151 Wis. 2d 833, 853, 447 N.W.2d 376 (Ct. App. 1989) ("Wisconsin has a significant interest in restricting the proliferation of child pornography."); *see also New York v. Ferber*, 458 U.S. 747, 756 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). Thus, law enforcement's interest in holding Plencner's property until it could be properly analyzed for child pornography was significant.

¶26    There are other factors to consider as well. Traditionally, computer searches have been given substantial leeway due to the complexity and volume of the analysis. *See, e.g.*, ***Syphers***, 426 F.3d at 469 (collecting cases). There is also no indication that the delay in searching was a result of bad faith on the part of law enforcement. *See **Segura***, 468 U.S. at 812; ***United States v. Metter***, 860 F. Supp. 2d 205, 216 (E.D.N.Y. 2012). Based on the information supplied by the DCI analyst and included in the affidavit for the 2013 warrant, the delay resulted from employee turnover—and likely the resulting lack of resources—at DCI, and the delay appears to have been inadvertent and not the result of bad faith or "complete abdication of [the officer's] work or failure to 'see any urgency.'" *See **Burgard***, 675 F.3d at 1034 (citation omitted).

¶27    Given the factual circumstances in this case, we cannot conclude that Plencner's possessory interests in his computers and hard drives were outweighed by the State's significant interest in preserving the evidence. To be clear, we agree with the State's assessment that the delay between the warrant-based seizure of Plencner's electronics and the ultimate search of the devices "was far from ideal." Given the delay in this case, law enforcement responded appropriately in securing a new warrant from a neutral magistrate, and the DCI analyst reasonably relied on the 2013 warrant in conducting his investigation.[12]

---

[12] The State also argues that even if Plencner's Fourth Amendment claim had merit, the good faith exception to the exclusionary rule would apply in this case, barring suppression of the evidence. As we decide this case on different grounds, we need not address the application of the good faith exception. *See **Patrick Fur Farm, Inc. v. United Vaccines, Inc.***, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (we decide cases on the narrowest possible grounds).

*Conclusion*

¶28     For the forgoing reasons, we conclude that any motion to suppress filed in this case would have either been meritless or based on an unsettled issue of law, and, accordingly, trial counsel was not constitutionally deficient for failing to file the motion.  As we conclude that as a matter of law trial counsel did not perform deficiently, Plencner was not entitled to a ***Machner*** hearing on his motion.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.