STATE of Wisconsin, Plaintiff-Respondent,

v.

David Jerome GANT, Defendant-Appellant.†

Court of Appeals

*No. 2014AP1980–CR. Oral argument August 18, 2015.*
*—Decided October 9, 2015.*

2015 WI App 83

(Also reported in 872 N.W.2d 137.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Hannah Schieber Jurss*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Donald V. Latorraca*, assistant attorney general.

Before Curley, P.J., Kessler and Bradley, JJ.

¶ 1. BRADLEY, J. David Jerome Gant appeals from a judgment entered on guilty pleas to ten counts of possession of child pornography, contrary to Wis. Stat. § 948.12(1m) (2009–10).[1] Gant claims all the child pornography found on his computer should be suppressed because the police violated his Fourth Amendment rights by seizing his computer without probable cause and keeping it for ten months. We hold that the police had probable cause to seize Gant's computer following the unnatural, violent death of his wife, and even if the seizure became unlawful because of its duration, suppression of the evidence of child pornography is not the proper remedy because the police found the evidence after getting a search warrant based on independent sources *and* the search was sufficiently attenuated from any unlawful retention of the computer. We affirm.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

514

## BACKGROUND

¶ 2. On September 28, 2010, Gant called police to his home at 4831 North 26th Street for a sudden death investigation of his wife, Crystal, whom he found hanging by the neck from a cable suspended from a beam in their basement. When police arrived, Gant had already moved his wife's body to a bed in the basement. Detective Matthew Goldberg, who investigated the scene, explained that police procedure is to handle an apparent suicide as a homicide. They do this by separating and interviewing witnesses, photographing the scene, and collecting evidence. Police Officer Barbara Court interviewed Gant's young daughter, who reported that her mother had been using a computer prior to her death, although the officer who seized the computers did not have that information at the time of seizure. Gant was also interviewed.

¶ 3. The police collected evidence from the scene, including three computers. Goldberg said computers are collected especially in possible suicide cases because suicide notes are often found on them. The computers were placed on inventory in the Police Administration Building. After Gant's interview, he signed a consent to search his property, but refused to consent to a search of his computers.

¶ 4. Within a day or two, the medical examiner ruled Crystal's death a suicide, but the investigation continued. A week or two later, Gant went to the Police Administration Building and asked for his computers back, but was told the police could not release the property yet. Gant claims he did the same thing again sometime in February 2011, but police told him he could not have any property back yet.

Gant never took any formal legal steps available under WIS. STAT. § 968.20 to request the release of his property.

¶ 5. On October 31, 2010, Gant was charged with exposing his genitals to a child for the purpose of sexual arousal. Police Officer Deborah Kranz was one of the officers investigating that case. Kranz was also the officer who spoke with Gant's brother, Jason Gant, in April 2011. Jason contacted the police to report Gant admitted he molested his own children and had child pornography on his computer. Kranz checked police reports relating to Gant and learned that Gant's computers were in police inventory. Kranz "pass[ed] along that information that there was possibly child porn on those computers."

¶ 6. On July 25, 2011, Gant was charged with first-degree sexual assault of a child. At about the same time, Kranz received a call from Gant's mother-in-law, Tess Jackson, who had discovered DVD computer discs containing child pornography near Gant's computer desk in his basement. Jackson was cleaning at Gant's home preparing to rent it. After Police Officer Jody Young picked up the DVDs, Kranz had all seventeen discs inventoried and notified the high technology unit of the police department so the discs could be examined.

¶ 7. After being notified about the computer discs by Kranz, Detective Dawn Jones researched all reports in the system on Gant and prepared an application to get a search warrant. The search warrant was issued in August 2011. Pursuant to the search warrant, Detective Richard McQuown, who works in the high technology unit of the Milwaukee Police Department, searched both the computer discs and Gant's computers. He found hundreds of files of child pornography on

one of Gant's computers—described as the "beige computer"—which was the one taken from a desk in Gant's basement at the time of the suicide. The seventeen DVD computer discs found near that computer desk also contained child pornography.

¶ 8. In October 2011, Jones interviewed Gant. Gant admitted the beige computer was his, that he used the computer to access pornography sites, and that he downloaded pornography involving "short people." He denied having any child pornography.

¶ 9. The State charged Gant with ten counts of child pornography. When police came to arrest Gant, he had a boxcutter and was slashing himself and the police officers. As a result, the State also charged him with battery to and resisting a police officer. These cases were consolidated for trial with the exposing genitals case and the sexual assault of a child case.

¶ 10. Gant filed a motion to suppress the evidence found on his computer on the grounds that the seizure and retention of the computers violated his Fourth Amendment rights. The trial court denied the motion and Gant pled guilty to ten counts of child pornography. The other charges were dismissed as a part of the plea deal. Gant was sentenced to ten years on each count, consecutive for a global sentence of 100 years in prison. Gant now appeals.

## DISCUSSION

A. *Lawfulness of the Seizure.*

¶ 11. Gant argues the seizure of his computers violated the Fourth Amendment of the United States Constitution and article I, section 11 of the Wisconsin

Constitution, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. amend. IV; WIS. CONST. art. I, § 11.[2] He argues the seizure was unlawful because the police did not have probable cause to take the computers. We disagree.

¶ 12. Probable cause exists when there is "a 'fair probability' " that contraband or evidence of a crime will be found in a particular place." *State v. Robinson*, 2010 WI 80, ¶ 26, 327 Wis. 2d 302, 786 N.W.2d 463 (citation and one set of quotation marks omitted). Probable cause deals with probabilities, not certainties, and therefore we look to see whether the conduct of the police was reasonable by looking objectively at the totality of the circumstances, including both what the investigating officer knew individually and the collective knowledge of the police department. *Id.*, ¶¶ 26–27; *see State v. Kutz*, 2003 WI App 205, ¶ 12, 267 Wis. 2d 531, 671 N.W.2d 660. Our review of a circuit court's denial of a suppression motion is mixed.

---

[2] The Fourth Amendment to the United States Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution similarly states:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

We will uphold factual findings unless they are clearly erroneous, but the " 'question of whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact,' " which we review independently. *State v. Sveum*, 2010 WI 92, ¶ 16, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted).

¶ 13. Here, the police were called to Gant's home for an apparent suicide by hanging of his wife. When the police arrived, Gant had already altered the scene by cutting down his wife's hanging body and moving it to a bed nearby. Police procedures require that the officers investigate a potential suicide in the same way they investigate a homicide. In other words, the police do not automatically assume the death was a suicide. In the Gant home, police observed, in plain view, three computers, which they seized because a computer may contain evidence of the suicide, such as a suicide note or recent searches as to how an individual would carry out a suicide. A computer may also contain other evidence such as information showing the apparent suicide was either a homicide or an assisted suicide. *See State v. Jensen*, 2011 WI App 3, ¶¶ 37, 93, 331 Wis. 2d 440, 794 N.W.2d 482 (2010). Further, Gant's daughter told another officer her mother had recently used the computer. Even though the investigating officer did not know the daughter reported this at the time he seized the computers, it was within the collective knowledge of the police department. Accordingly, we agree with the circuit court that the police had probable cause to seize the computers. There was a fair probability that the computers contained evidence the police needed to determine if the death was a suicide, an assisted suicide, or a homicide. Under the totality of

the circumstances, it was reasonable for the police to seize the computers.[3]

B. *Duration of Seizure, Independent Source, and Attenuation.*

¶ 14. Gant also argues that the ten-month retention of his computer made the seizure unlawful; thus, the evidence found on it should be suppressed. He argues that the medical examiner ruled Crystal's death a suicide within a couple days; therefore, no reason existed for the police to keep his computer. He claims that neither the independent source nor the attenuation doctrines apply. We assume, without deciding, that the ten-month retention of Gant's computer, despite his two requests for its return, made the seizure unlawful.[4] However, we hold that both the

---

[3] Gant argues that if we affirm the decision here, we are in essence authorizing the seizure of all computers in every suicide case and that will open the door to unlimited seizures. We do not agree. Because the facts presented here support the circuit court's determination that probable cause existed to seize Gant's computers, it does not automatically mean that *every* case of suicide will require seizure of computers in the home.

[4] The State points out that Gant never attempted to secure the return of his computer through the statutory means available in WIS. STAT. § 968.20(1) ("Any person claiming the right to possession of property seized pursuant to a search warrant or seized without a search warrant may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned . . . . If the right to possession is proved to the court's satisfaction, it shall order the property . . . returned if" certain circumstances are met.). Contrary to the concurrence, we do not hold, impliedly or otherwise, that Gant's only avenue to retrieve his property is found in § 968.20(1).

independent source and attenuation doctrines apply such that the evidence police recovered from Gant's computer under the valid search warrant need not be suppressed.

¶ 15. When the police obtain evidence through unconstitutional means, we apply the exclusionary rule, which makes the evidence "generally inadmissible in court proceedings." *State v. Scull*, 2015 WI 22, ¶ 20, 361 Wis. 2d 288, 862 N.W.2d 562. The purpose of the exclusionary rule is to deter unlawful police conduct. In certain circumstances, however, we allow admission of evidence obtained through unconstitutional means because "suppression would not serve the exclusionary rule's purpose of deterring police misconduct." *Id.*, ¶ 66 (Ziegler, J., concurring). Two instances where exceptions are made to the exclusionary rule are when the evidence obtained came through an independent source and when the discovery of the evidence was sufficiently attenuated from the police misconduct. *Id.*

¶ 16. We conclude that the independent source and the attenuation doctrines both apply in this case; therefore, even if the retention of Gant's computers created a constitutional violation, the exclusionary rule is not the proper remedy. In determining whether the independent source doctrine applies, we use a two-part test: (1) if the unlawful seizure had not occurred (here the lengthy retention of Gant's computer), would the police still have sought the search warrant; and (2) did the unlawful seizure influence the decision to issue the search warrant. *See State v. Carroll*, 2010 WI 8, ¶ 45, 322 Wis. 2d 299, 778 N.W.2d 1. We conclude the independent source doctrine applies because the retention of Gant's computers did not affect the officer's decision to get a search warrant, and

521

it did not affect the magistrate's decision to issue the search warrant. The police decided to get a search warrant based on Tess Jackson's report that while she was cleaning Gant's basement, she found child pornography on DVD computer discs near Gant's computer desk. They also had information from Jason Gant disclosing that Gant said he had child pornography on his computer. This information is completely independent of the police retention of Gant's computers. Stated another way, even if the police had returned Gant's computers, the police would still have sought the search warrant based on Jackson's reports in light of the information from Jason Gant. Similarly, the lengthy retention of the computers did not influence the decision to issue the warrant. The search warrant was based on information independent from the basis for the retention of the computers;[5] therefore, the circuit court properly denied Gant's motion to suppress the evidence obtained as a result of the lawful search pursuant to the valid search warrant.

¶ 17. In determining whether the attenuation doctrine applies, we consider: (1) the temporal proximity between the police misconduct and evidence obtained from the valid search warrant; (2) any intervening circumstances; and (3) the purpose and fla-

---

[5] The record is unclear as to why the police retained Gant's computers for ten months. What is clear is that there is no evidence the computers were retained in hopes that as time went by, a witness would come forward with evidence that Gant had child pornography on them so that a valid search warrant could be issued. Gant does not argue on appeal that the search warrant eventually issued was unlawful or not supported by probable cause. Instead, Gant argues the police conduct of keeping Gant's computers for ten months was so flagrant that suppression was required. There is no evidence of flagrant police misconduct in this record.

grancy of the police misconduct. *See State v. Bermudez*, 221 Wis. 2d 338, 353, 585 N.W.2d 628 (Ct. App. 1998). We will not suppress evidence if the State can show a sufficient break in the causal chain between the illegal action and the lawful seizure (from the valid search warrant) such that the connection between the two purges any taint. *See State v. Phillips*, 218 Wis. 2d 180, 204–06, 577 N.W.2d 794 (1998). "The object of attenuation analysis is 'to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost.' " *State v. Artic*, 2010 WI 83, ¶ 65, 327 Wis. 2d 392, 786 N.W.2d 430 (citation omitted). After applying these principles, we conclude the attenuation doctrine applies and the circuit court correctly denied Gant's motion to suppress.

¶ 18. The first factor is the temporal proximity between the unlawful retention and the evidence obtained from the lawful search warrant. The search warrant was issued while Gant's computers were still in police inventory, but the fact that the police never returned Gant's computers had nothing to do with Jason Gant's report or Jackson's discovery of child pornography on DVD computer discs at Gant's home that led to the issuance of the lawful search warrant.

¶ 19. Second, the intervening circumstances support attenuation. Jason Gant reported to police that Gant told him Gant had child pornography on his computer and Jackson discovered child pornography on DVD computer discs. Both of these intervening circumstances are independent of the retention of the computers by police. There is no evidence that the police held on to Gant's computers hoping independent evidence of child pornography would be located, and

the computers were not originally seized or held because Gant was suspected of child pornography. The investigation into child pornography was completely independent of the initial seizure and the retention.

¶ 20. Third, there is no evidence of flagrant police misconduct. The police seized Gant's computers with probable cause in connection with the violent death of his wife. The police did not illegally search Gant's computers. Instead, the computers sat in police inventory until Jason Gant told police there was child pornography on Gant's computer and Jackson found DVD computer discs with child pornography. This information led to the realization that Gant's computers were still in police possession. A valid search warrant was issued to conduct a search of the computers and police found child pornography on Gant's computers. We see nothing to suggest that the police acted flagrantly.

¶ 21. Accordingly, we hold that sufficient attenuation existed to support the circuit court's decision to allow admission of the evidence challenged here.

*By the Court.*—Judgment affirmed.

¶ 22 KESSLER, J. (*concurring*). I agree with the Majority that the police originally had probable cause to seize Gant's computers at the time of his wife's death. I also agree with the Majority result because I conclude that Gant has not demonstrated that he made a reasonable effort to secure the return of his property (the computers seized on the night of his wife's death) when he went to the Police Administration Building "a week or two" after his wife's death had been ruled a suicide to request the return of his property. I do not join the implied holding of the

Majority that Gant's only avenue to retrieve his property was legal action under Wis. Stat. § 968.20. *See* Majority, ¶¶ 4, 14 n.4.

¶ 23. Wisconsin Stat. § 968.20(1) provides a method for a person to retrieve property in police custody. ("Any person claiming the right to possession of property . . . seized without a search warrant *may* apply for its return to the circuit court for the county in which the property was seized . . . ."). (Emphasis added.) We know that under the rules of statutory construction "may" is generally construed as permissive, not mandatory. *See City of Wauwatosa v. Milwaukee Cty.*, 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963) ("Generally in construing statutes, 'may' is construed as permissive and 'shall' is construed as mandatory unless a different construction is demanded by the statute in order to carry out the clear intent of the legislature."). Hence, contrary to the implication of the State's argument, Gant was not required to use this method to retrieve his property.

¶ 24. Milwaukee Police Department rules allow for the return of seized property without the necessity of the court proceeding permitted by Wis. Stat. § 968.20. *See, e.g.,* Milwaukee Police Department Standard Operating Procedure, 560–Property, §§ 560.25(A)(2)(c)-(d),[1] 560.50, 560.60.

---

[1] Sections 560.25(A)(2)(c)-(d) of the Milwaukee Police Department's Standard Operating Procedures provide:

(c) If property is released to an owner/claimant, a copy of the PP-32 listing the property that has been returned to the owner/claimant, a *Property Receipt* (form PP-32) signed by the person (owner) receiving the property, [and] a photocopy of the citizen's identification card . . . shall be faxed to Property Control.

(d) All original paperwork concerning property given back to the owner/claimant shall be forwarded to Property Control.

¶ 25. There is no evidence in the record that there was *any* ongoing investigation into Gant's wife's death at the time Gant initially sought the return of his computer, which was between "one week" and "a few weeks" of his wife's suicide. There is no evidence that probable cause for the initial seizure of the computer still existed or that police had begun *any* attempt to search the seized computer before Gant asked for the return of his property.

¶ 26. However, the nature and extent of Gant's request for the return of his computers is problematic. According to Gant's testimony, the only person to whom he made the request was an unnamed "police officer" staffing the metal detectors on the second floor of the Police Administration Building. According to Gant's testimony, this officer did not direct Gant to an office where Gant could speak with a detective, but instead called someone the officer identified as a detective, then told Gant that Gant "couldn't get any of the property yet." Gant did nothing more to retrieve his seized computer until after he had been charged with a criminal offense unrelated to his wife's death.

¶ 27. Gant did nothing that would give the detectives responsible for the seizure reasonable notice that he wanted his property back promptly. It defies common sense to believe that a person operating a metal detector in the hall has the authority to determine whether seized property can be released to its owner. While I do not doubt the unidentified officer's good faith attempt to be helpful, it is nonetheless impossible to consider the exchange here to be a reasonable effort by Gant to obtain his property, or to be reasonable notice by Gant to the police that he wanted that property back promptly.

¶ 28. For the reasons described above, I concur in the result reached by the Majority.