**COURT OF APPEALS
DECISION
DATED AND FILED**

**October 14, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1355-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF694

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOHN LAMONT YOUNG,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. John Young appeals a judgment, entered upon his guilty pleas, convicting him of multiple drug-related felonies.[1] Young argues the circuit court erred by denying his motion to suppress evidence obtained following his warrantless arrest because the arrest was not supported by probable cause. We reject his argument and affirm.

## BACKGROUND

¶2 A criminal complaint charged Young with delivery of less than three grams of heroin, possession with intent to deliver between ten and fifty grams of heroin, possession with intent to deliver between fifteen and forty grams of cocaine, maintaining a drug trafficking place, possession of THC, and possession of drug paraphernalia. All counts were charged as second or subsequent offenses, with the exception of the possession of drug paraphernalia count.

¶3 The evidence supporting the charges against Young was obtained following his warrantless arrest. Young moved to suppress this evidence, arguing that the arrest was unlawful because it was not supported by probable cause.

¶4 At a hearing on Young's motion, a number of members of the Brown County Drug Task Force testified regarding the circumstances of the

---

[1] Young's notice of appeal also referenced the circuit court's denial of his postconviction motion, in which he sought sentence modification. In his brief-in-chief, Young clarified that he is not appealing the denial of his postconviction motion, and so we do not further address in this opinion the order denying that motion.

May 12, 2015 controlled drug buy that ultimately led to Young's arrest.[2] Officer Jordan Atlas testified that, as part of his role with the controlled buy surveillance team,[3] he directly observed the residence at which the controlled buy took place. While doing so, he witnessed a white sport utility vehicle (SUV) "pull[] up" to the residence. He then observed an individual wearing a red baseball hat "exit[] the residence" and "approach the front passenger seat [of the white SUV], enter the vehicle, and after a short time, exit." Atlas observed that the individual wearing the red hat "possibly" had a "small bag" with him when he exited the vehicle,

[2] In its response brief, the State relies on factual assertions contained in the criminal complaint to support its argument that the circuit court properly denied Young's motion to suppress. More specifically, the State relies on allegations in the criminal complaint concerning information about what was occurring in the residence under surveillance that a confidential informant provided to officers who were monitoring the controlled buy. In his reply brief, Young contends that the State's reliance on these factual assertions is improper because those "facts [were] never introduced into evidence" at the suppression hearing. Because we conclude that the facts that were testified to at the suppression hearing supported the court's determination that Young's arrest was lawful, we accept Young's argument in this regard. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (court of appeals need not address an issue when resolution of another issue is dispositive to the appeal). We therefore limit the facts regarding law enforcement's observations during the controlled drug buy to those introduced at the suppression hearing.

Nonetheless, we observe that in one of our recent unpublished opinions, we rejected the notion that a circuit court cannot rely upon uncontradicted factual assertions contained in a criminal complaint when deciding a motion to suppress. *See State v. Neal*, No. 2017AP1397-CR, unpublished slip op. ¶¶8 n.1, 11 (WI App Apr. 3, 2018) (citing *State v. Zamzow*, 2016 WI App 7, ¶13, 366 Wis. 2d 562, 874 N.W.2d 328 (2015), *aff'd*, 2017 WI 29, 374 Wis. 2d 220, 892 N.W.2d 637). Moreover, we note that Young's motion to suppress appeared to concede that the facts alleged in the criminal complaint concerning the controlled drug buy were accurate; Young's motion simply challenged whether there were sufficient alleged facts to "connect the vehicle belonging to the defendant to the vehicle allegedly involved in the drug transaction." Thus, because the purpose of an evidentiary hearing—including in the context of a pretrial motion to suppress—is to "expose and settle factual disputes," we question whether the State can be faulted for relying on undisputed factual assertions contained in the criminal complaint in its appellate argument. *See State v. Radder*, 2018 WI App 36, ¶¶15-16, 382 Wis. 2d 749, 915 N.W.2d 180.

[3] Officer Brad Biller, another member of the surveillance team, testified that there were approximately ten officers conducting surveillance for the controlled drug buy.

although Atlas could not identify what was in the bag. The vehicle then drove away.

¶5 Atlas testified that, based on his experience, these events likely constituted a "drug transaction." He explained that he believed the individual wearing the red baseball hat was a "middler"—that is, a middleman for a drug transaction. Atlas further explained that it is typical in drug transactions for there to be a source of the drug supply, a middleman, and a buyer. It was his belief that the individual wearing the red baseball hat was a middler because he approached the vehicle from a "maintained trafficking place" and had only brief contact with the vehicle. Put differently, Atlas believed the activity he observed was consistent with a "hand-to-hand," in which the middler received drugs from a source in order to later deliver the drugs to a buyer.

¶6 Atlas also testified that after the white SUV drove away from the scene of the controlled buy, he radioed a "description to assisting agents" to allow them to locate the vehicle. Atlas stated that his description of the vehicle included the fact that it had "aftermarket parts of grill and taillights." He also described the white SUV as a "high-end" and "expensive" vehicle not commonly present in Green Bay.

¶7 Officer Brad Biller testified that while he was driving his vehicle in the vicinity of—but not in direct view of—the scene of the controlled buy, he received a radio communication informing him that a white SUV had "met with who we thought was the middler in the deal." Biller acknowledged that after the white SUV left the scene of the controlled buy, it "kind of disappeared on us." Less than ten minutes later, Biller observed a white SUV five or six blocks from the scene of the controlled buy. At that time, the vehicle was parked and

unoccupied. Biller then waited until an officer who had "observed the SUV during the deal came over and identified that [vehicle] as the one that was involved in the transaction."

¶8 Biller subsequently learned from a license plate check that Young was the white SUV's registered owner. Biller stated he "knew through prior investigations that the defendant was the target of another heroin investigation, so that kind of solidified the fact that it was for sure the vehicle [observed at the scene of the controlled drug buy], in my mind." Approximately forty-five minutes after Biller located the white SUV, he observed it driving away from him.[4]

¶9 Officer Zachary Jakel testified that he performed a traffic stop on the white SUV.[5] He stated that he stopped the vehicle because "it matched the description of the vehicle that [he] heard out over the radio of a white SUV with aftermarket taillights that was at—seen doing short-term traffic at the scene of the controlled purchase."

¶10 Following the suppression hearing, the circuit court denied Young's motion in an oral decision. Young then filed a pro se motion seeking reconsideration of the court's decision. After the court denied that motion, Young pled guilty to delivery of less than three grams of heroin, possession with intent to deliver between ten and fifty grams of heroin, possession with intent to deliver

---

[4] Biller stated he did not observe anyone enter the white SUV before it drove away because he was "distracted" by other activity in the neighborhood.

[5] The circumstances of the traffic stop were not described in detail at the suppression hearing; Biller did state, without elaboration, that the stop was a "takedown" of the white SUV. In any event, the State does not dispute that Young was arrested at the time of the traffic stop and relies only on events which occurred prior to the stop to argue that the arrest was supported by probable cause.

between fifteen and forty grams of cocaine, and maintaining a drug trafficking place charges. The court imposed sentences totaling ten years' initial confinement and ten years' extended supervision. Young now appeals, challenging the denial of his motion to suppress. *See* WIS. STAT. § 971.31(10) (2017-18).[6]

## STANDARD OF REVIEW

¶11    In reviewing the denial of a motion to suppress evidence, we will uphold a circuit court's findings of historical fact unless they are clearly erroneous. ***State v. Sykes***, 2005 WI 48, ¶12, 279 Wis. 2d 742, 695 N.W.2d 277. However, we review de novo the circuit court's application of constitutional principles to those facts. ***Id.***

## DISCUSSION

¶12    Young contends that his arrest was not lawful because it was not supported by probable cause that he had committed a crime. A warrantless arrest is not lawful except when supported by probable cause. ***State v. Lange***, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551. Probable cause to arrest is that quantum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was about to commit a crime. ***State v. Secrist***, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999). Under the collective knowledge doctrine, an arresting officer need not have personal knowledge of facts supporting probable cause if the collective knowledge of police is sufficient to constitute probable

---

[6] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

6

cause. ***State v. Pickens***, 2010 WI App 5, ¶12, 323 Wis. 2d 226, 779 N.W.2d 1 (2009).

¶13     Probable cause does not require proof "beyond a reasonable doubt or even that guilt is more likely than not." ***State v. Young***, 2006 WI 98, ¶22, 294 Wis. 2d 1, 717 N.W.2d 729. The objective facts need only lead to the conclusion that guilt is more than a possibility. ***State v. Richardson***, 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990). "The probable cause standard is a practical, nontechnical one invoking the practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." ***State v. Ehnert***, 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991). The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances. ***Lange***, 317 Wis. 2d 383, ¶20.

¶14     We conclude that based on the collective facts known to the officers at the time they arrested Young, there was probable cause to believe that Young had committed a crime—specifically, a drug-related crime. This conclusion is based on the officers' reasonable inferences that: (1) the contact between the individual wearing the red hat and someone in the white SUV constituted a drug transaction; (2) the white SUV later observed by Biller was the same white SUV involved in that suspected drug transaction; and (3) Young was the driver of the SUV. We explain why each of these inferences was reasonable in turn.

¶15     To begin, the officers were conducting a controlled drug buy involving approximately ten officers which was focused on a particular residence. A rigorous controlled drug buy supports a finding of probable cause that criminal activity is afoot at that location. *See* ***State v. Hanson***, 163 Wis. 2d 420, 424, 471 N.W.2d 301 (Ct. App. 1991). During the surveillance of the controlled buy, Atlas

7

observed the individual wearing the red hat emerge from the residence in question to make brief contact with someone in a white SUV. Atlas saw the individual wearing the red hat return to the residence with what he believed was a small bag in his possession. Based on his experience, Atlas believed that this activity was indicative of a drug transaction.

¶16    Young argues that the above-described activity constituted "insufficient evidence that the driver probably committed a crime." In so arguing, he relies on the fact that there "are many reasons individuals may briefly engage with one another in a vehicle—to say hello, to return something borrowed, to exchange a gift, to name a few." However, "an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause." *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. It was reasonable for Atlas to infer, based on his experience, that the individual—who emerged from the residence that was under surveillance for a controlled drug buy and who briefly made contact with someone in a vehicle before returning to the house with what appeared to be a small bag—was engaged in a drug transaction.

¶17    It was also reasonable for the officers to infer that the white SUV they discovered parked five or six blocks from the scene of the controlled drug buy was the same vehicle reported to have left the scene of the controlled buy ten minutes earlier. This inference was reasonable based on Atlas' description of the SUV as being a rare, high-end vehicle with distinctive taillights and the vehicle's close proximity to the scene of the controlled buy.

¶18    Indeed, Young does not dispute that the officers "had some reason to suspect" that the white SUV observed by Biller was the same vehicle observed at

the scene of the controlled buy. Nonetheless, he contends that because the officers did not observe the white SUV's license plate at the scene of the controlled buy and were not certain as to its specific make and model, "they could not be certain" that their suspicion was correct.

¶19 Young's argument is misplaced, insomuch as "[p]robable cause deals with probabilities, not certainties, and therefore we look to see whether the conduct of the police was reasonable by looking objectively at the totality of the circumstances." *State v. Gant*, 2015 WI App 83, ¶12, 365 Wis. 2d 510, 872 N.W.2d 137. As stated, it was reasonable for the officers to infer that the rare, high-end white SUV with distinctive taillights located five or six blocks from the scene of the controlled drug buy was the same rare, high-end white SUV at the scene of the controlled buy ten minutes earlier.

¶20 Finally, it was reasonable for the officers to infer that Young, who was the white SUV's registered owner, was the individual driving the vehicle both at the scene of the controlled buy and when the officers initiated the traffic stop. Young makes a cursory argument to the contrary, contending that the officers' assumption that he, as the vehicle's registered owner, was driving the vehicle both times they observed it was "unreasonable."

¶21 We are not persuaded. As the United State Supreme Court recently recognized, it is "commonsense" to infer that a vehicle's registered owner is its driver. *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020). In fact, this inference is reasonable even when the vehicle's registered owner has a revoked license. *Id.* Thus, in this case—where there was no indication that Young had a revoked license or that he otherwise was not driving the white SUV at that time—it was

certainly reasonable for the officers to infer that Young, as its registered owner, was the individual driving it.

¶22 Young contends that two cases with a "similar quantity and quality of evidence" compel a conclusion that his arrest was not supported by probable cause: *State v. Washington*, 2005 WI App 123, 284 Wis. 2d 456, 700 N.W.2d 305, and *State v. Young*, 212 Wis. 2d 417, 569 N.W.2d 84 (Ct. App. 1997). Because both cases are materially distinguishable, we disagree.

¶23 In *Washington*, police officers were sent to investigate a complaint that loitering and drug sales were taking place at an allegedly vacant house. *Washington*, 284 Wis. 2d 456, ¶2. When they arrived on scene, the officers encountered Washington—whom they recognized from previous encounters—in front of the house. *Id.* The police ordered him to stop, and although he initially did so, he proceeded to step backward looking nervous. *Id.* Washington then threw his hands up, dropping a towel. *Id.* After subduing Washington and retrieving the towel, one of the officers found a baggie containing cocaine was wrapped inside it. *Id.* We concluded that the officers lacked the requisite reasonable suspicion to initially order Washington to stop, holding:

> Investigating a vague complaint of loitering and observing Washington in the area near a house that the officer believed to be vacant, even taken in combination with the officer's past experiences with Washington and his knowledge of the area, does not supply the requisite reasonable suspicion for a valid investigatory stop. People, even convicted felons, have a right to walk down the street without being subjected to unjustified police stops.

*Id.*, ¶17.

¶24    Unlike in *Washington*, the officers here were not investigating a "vague complaint" when they observed the white SUV.  Instead, they were members of a drug task force monitoring a controlled drug buy at a particular residence, and they observed an individual from that residence make contact with someone inside the white SUV.  As explained, their observations of that contact led them to reasonably conclude that the white SUV was involved in a drug-related transaction.  Thus, *Washington* is inapposite.

¶25    In *Young*, the defendant met briefly with another individual on the sidewalk in a high drug trafficking area in the early afternoon.  *See Young*, 212 Wis. 2d at 420.  According to the officer who stopped Young, drug transactions in that area took place on that street and involved brief meetings.  *Id.* at 433.  The officer acknowledged that he did not know if either Young or the individual he met with were suspected of being drug dealers.  *Id.* at 421-22.  Nor did the officer know if Young even had physical contact with the other individual.  *Id.* at 422. The majority in *Young* found that these circumstances were "not sufficient to give rise to the reasonable, articulable suspicion of criminal activity that justifies the intrusion of an investigative stop." *Id.*

¶26    At least two facts materially distinguish the instant case from *Young*. First, unlike in *Young*, the individual who made contact with someone inside the white SUV was suspected of being involved in a drug transaction—in fact, the residence from which he emerged to contact someone in the vehicle was under surveillance for a controlled drug buy.  Second, it appeared to Atlas that the individual had a small bag in his possession after he left the white SUV— suggesting that the contact between the individual and someone in the white SUV involved a physical transfer of contraband, located in that bag.

¶27 Given the totality of circumstances known to the officers in this case, they reasonably concluded that it was more than a possibility that Young was the driver of the white SUV that took part in a drug-related transaction at the scene of the controlled buy. Young's warrantless arrest was therefore lawful.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.