COURT OF APPEALS
DECISION
DATED AND FILED

November 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1317-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF44

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL J. VAN LINN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Oconto County: MICHAEL T. JUDGE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    HRUZ, J.  Daniel Van Linn appeals a judgment of conviction for fifth-offense operating a motor vehicle while intoxicated (OWI).  Van Linn was injured in an automobile accident.  A police officer noted that he smelled of intoxicants, and Van Linn admitted to drinking "a couple of beers."  After

Van Linn was transported to a hospital, a police officer took a warrantless blood sample from him, which the circuit court subsequently deemed an unlawful search and suppressed as evidence. The court later signed a subpoena from the State seeking medical records from Van Linn's treatment providers at the hospital, which revealed that those providers had taken a second blood sample from Van Linn for diagnostic purposes. The court denied Van Linn's motion to suppress the diagnostic blood evidence, and Van Linn appeals that determination.

¶2 We conclude the circuit court properly denied Van Linn's suppression motion. The diagnostic blood evidence was obtained independent of the earlier, unlawful blood draw, and we conclude the independent source doctrine applies under the circumstances here. We reject Van Linn's arguments to the contrary and affirm.

## BACKGROUND

¶3 At approximately 2:00 a.m. on March 26, 2017, police, fire and ambulance first responders were dispatched following a report of an accident in the Town of Mountain in Oconto County. First responders discovered an SUV registered to Van Linn's ex-wife near the reported location of the accident. The SUV had struck the side of a cabin on private property. No one was present in the vehicle, but there was blood on the steering wheel and the driver's-side door, as well as a cell phone in the front-passenger seat. The SUV appeared to have been damaged in another accident, and the doors were inoperable. The responding officer, deputy Nick School, determined that whoever had exited the vehicle after the accident did so through the front driver's-side window. School was able to follow the vehicle's tracks back to an area where it had also struck a tree in a ditch.

¶4 Police located Van Linn lying in a nearby yard. He was bleeding from his head and hands. When questioned, Van Linn claimed he had been out for a walk and further claimed not to have any knowledge of an accident. School noted that Van Linn smelled of alcohol, and Van Linn acknowledged he had consumed "a couple of beers." Dispatch advised School that Van Linn had four prior OWI offenses and, therefore, was subject to a .02 blood alcohol limit.

¶5 Van Linn was transported by ambulance to receive medical care; he was originally destined for a hospital in Oconto County but was diverted to ThedaCare Medical Center—Shawano. There, School met with Van Linn and medical staff, whereupon he determined that he could not perform field sobriety tests given Van Linn's injuries. School informed Van Linn he was under arrest for fifth-offense OWI and read him the "Informing the Accused" form verbatim at 3:56 a.m. Van Linn refused to consent to an evidentiary chemical test of his blood.

¶6 School, believing that exigent circumstances existed due to the delay in transporting Van Linn, decided to take a blood sample from him without obtaining a warrant. Hospital staff collected the sample and provided it to School, who secured it in his patrol vehicle; we refer to this sample as the "law enforcement blood sample." After receiving treatment and being medically cleared, Van Linn agreed to provide a statement to police before he was transported to the jail. The law enforcement blood sample was mailed that morning to the state Forensic Toxicology Laboratory, which analyzed the sample and concluded that it contained an alcohol concentration well in excess of the .02 restriction.

¶7 Van Linn was charged with fifth-offense OWI, and he filed a motion to suppress the results from the test of the law enforcement blood sample. The circuit court granted the motion, finding that the warrantless blood draw was not justified by exigent circumstances. The court concluded that the warrantless blood draw violated Van Linn's Fourth Amendment rights and that all evidence derived from that draw must be suppressed.

¶8 Thereafter, the State requested circuit court approval of a subpoena directed to ThedaCare Medical Center—Shawano seeking Van Linn's medical records created in connection with his treatment on March 26, 2017. After the court signed the subpoena, Van Linn objected and filed a motion to quash.[1] ThedaCare provided the records before the motion to quash could be heard, and the court deemed the motion moot. The records revealed that hospital personnel, acting independently of law enforcement, had taken one or more blood samples from Van Linn and performed a blood panel for diagnostic purposes, which included his blood alcohol concentration.[2] We refer to this sample (or samples) as the "the diagnostic blood test."

¶9 Van Linn then moved to suppress evidence related to the diagnostic blood test, raising numerous concerns about the evidence (including chain-of-custody issues and the availability of independent testing of the samples obtained)

---

[1] The circuit court also signed a subpoena directed to Mountain Ambulance, the company that transported Van Linn after the accident. Van Linn does not raise any issue on appeal regarding that subpoena or any evidence obtained from it.

[2] As the State notes, the record is not entirely clear whether more than one additional blood sample was taken for diagnostic or treatment purposes. However, the precise number of blood samples taken from Van Linn for diagnostic or treatment purposes is immaterial to the issues presented.

and arguing that the results were privileged under WIS. STAT. § 905.04(2) (2017-18)[3] (providing for physician-patient privilege). Van Linn also argued that to give the exclusionary rule its "proper purpose and effect," the circuit court was required to also suppress the results of the diagnostic blood test after having suppressed the test results of the earlier law enforcement blood sample. In response, the State asserted that the evidence obtained from the subpoena should not be suppressed because "[t]he hospital's action [in sampling and analyzing Van Linn's blood] was completely separate and independent of law enforcement's request for a blood sample under the State's implied consent law."

¶10     The circuit court denied Van Linn's motion to suppress the evidence related to the diagnostic blood test. It rejected Van Linn's assertion of privilege, but it did not address Van Linn's conclusory contention that the suppression of the diagnostic blood test evidence was necessary to effectuate the purposes of the exclusionary rule vis-à-vis the suppressed law enforcement blood sample. Following the ruling, Van Linn pled no contest to the fifth-offense OWI charge. He now appeals, challenging the denial of his motion to suppress the diagnostic blood test evidence.[4]

**DISCUSSION**

¶11     On appeal, Van Linn argues that the evidence from the diagnostic blood test was inadmissible because it was the result of the prior unlawful

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's no-contest plea. WIS. STAT. § 971.31(10).

search—invoking the well-established notion that all evidence derived from an illegal search is the "fruit of the poisonous tree" and must be suppressed. *See Nardone v. United States*, 308 U.S. 338, 341 (1939). Relying on *Murray v. United States*, 487 U.S. 533 (1988), and *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), Van Linn contends that the diagnostic blood test evidence was derived from the earlier illegal search, both because the suppression of the law enforcement blood sample was a "but-for" cause of the subpoena request and because the affidavit in support of the subpoena mentioned the blood alcohol content present in the earlier sample.[5]

¶12    As an initial matter, the State contends Van Linn has forfeited this argument. Forfeiture is a party's failure to timely assert a right. *State v. Coffee*, 2020 WI 1, ¶19, 389 Wis. 2d 627, 937 N.W.2d 579. The general rule is that issues, even those of constitutional dimension, that are not presented to the circuit court will not be considered for the first time on appeal. *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). The State argues that this rule applies to Van Linn's appellate arguments because he did not specifically argue to the circuit court "that the medical records were in any way fruit of the poisonous tree." The fact that Van Linn focused on privilege arguments before the circuit court is, in the State's view, fatal to our ability to consider his appellate claim that the diagnostic blood test evidence was derived from the unlawful law enforcement blood sample. Whether a defendant has properly preserved a claim for appellate

_____

[5] The affidavit in support of the subpoena disclosed that the law enforcement blood sample analyzed by the state Forensic Toxicology Laboratory had a blood alcohol concentration of .205.

review is a question of law that this court reviews de novo. *State v. Corey J.G.*, 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998).

¶13 We decline to apply the forfeiture doctrine under the circumstances of this case. The forfeiture rule is a rule of judicial administration, not a mandate, and it need not be applied in every case. *Coffee*, 389 Wis. 2d 627, ¶21. Here, although Van Linn arguably did not outline the specific argument he makes on appeal, his suppression motion clearly raised a Fourth Amendment challenge to the diagnostic blood test evidence. As such, addressing Van Linn's argument here would not blindside the circuit court with a reversal that did not originate in that forum. *See State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995). Moreover, there are no disputed facts requiring resolution. And although the State contends Van Linn should not be allowed to make an argument "which the prosecutor was never given notice of or the opportunity to respond," it has not identified any prejudice to it that would arise from our consideration of the issue on appeal. We therefore proceed to the merits of Van Linn's appeal.

¶14 Whether a search comports with the Fourth Amendment is a question of constitutional fact. *State v. Carroll*, 2010 WI 8, ¶17, 322 Wis. 2d 299, 778 N.W.2d 1. We will uphold a circuit court's findings of evidentiary or historical facts unless they are clearly erroneous. *Id.* We independently determine the application of constitutional principles to those facts. *Id.*

¶15 The parties' dispute turns on the scope of the exclusionary rule. "[T]he exclusionary rule requires courts to suppress evidence obtained through the exploitation of an illegal search or seizure." *Id.*, ¶19. Under *Murray*, the rule applies not only to primary evidence seized during an unlawful search, but also to derivative evidence acquired as a result of the illegal search, unless the State

shows sufficient attenuation from the original unlawful search to dissipate that taint. *Carroll*, 322 Wis. 2d 299, ¶19 (citing *Murray*, 487 U.S. at 536-37).

¶16 Here, the State relies on the independent source doctrine, which was developed "[a]lmost simultaneously with [the Supreme Court's] development of the exclusionary rule" and was announced in *Silverthorne Lumber Co.* *See Murray*, 487 U.S. at 537. The independent source doctrine is a function of the notion that the exclusionary rule should not "put the police in a worse position than they would have been in absent any error or violation." *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)). To determine whether law enforcement obtained evidence from a source independent of a constitutional violation, courts look to two factors: (1) whether, absent the unlawful seizure, police would still have applied for the search warrant; and (2) whether the unlawful seizure influenced the magistrate's decision to grant the search warrant. *State v. Gant*, 2015 WI App 83, ¶16, 365 Wis. 2d 510, 872 N.W.2d 137; *see also Murray*, 487 U.S. at 542.

¶17 Van Linn asserts that *Murray* dictates that the evidence derived from the diagnostic blood test must be suppressed. In *Murray*, police officers, having intercepted vehicles containing contraband during a sting operation, unlawfully entered a warehouse and observed marijuana bales, then applied for (and were granted) a warrant to search the warehouse without the application mentioning the earlier warehouse entry or their observations. *Murray*, 487 U.S. at 535-36. In determining whether the "search pursuant to [the] warrant was in fact a genuinely independent source of the information and tangible evidence at issue," the Court observed that the doctrine would not apply "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if

information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.* at 542 (footnote omitted).

¶18    Van Linn asserts the State ran afoul of this prohibition against the circuit court considering otherwise unlawfully obtained evidence when issuing the subpoena here.  This alleged error occurred because the State mentioned the alcohol content of the earlier blood sample in its subpoena affidavit and, as a result, "plainly used information gained from its illegal search to demonstrate the probable cause it needed" to issue the subpoena.  Consequently, Van Linn argues the result in this case is dictated by *Silverthorne Lumber Co.*, where law enforcement officers unlawfully seized books, papers and documents and then, after returning the evidence, applied for a subpoena for those same documents, relying upon the knowledge gained from the initial seizure.  *Silverthorne Lumber Co.*, 251 U.S. at 391.  The Supreme Court held that such a procedure does not constitute an independent source; "the knowledge gained by the Government's own wrong cannot be used by it" to establish probable cause for an alternative method of obtaining the evidence.  *Id.* at 392.

¶19    Van Linn and the State appear to agree that the principles articulated in *Silverthorne* and *Murray* apply equally to subpoenas and warrants, and we assume that to be the case.[6]  We do not agree with Van Linn, however, that the State is attempting to take an impermissible "back door" to avoid the circuit court's earlier suppression ruling.  Nor do we agree with him that merely by disclosing the impermissibly derived blood alcohol content in the subpoena

---

[6] Both subpoenas and search warrants may issue upon a showing of probable cause. *See* WIS. STAT. §§ 968.12 and 968.135.

application, the State automatically rendered the diagnostic blood test evidence the "fruit" of the earlier unlawful law enforcement blood sample.

¶20    We reach these conclusions because, most importantly, the diagnostic blood test evidence sought by the State was created completely independently of the impermissible law enforcement blood sample. The medical provider drew its own sample of blood for treatment purposes and conducted its own analysis. The purpose of the draw was not to obtain evidence of a crime but, rather, to diagnose and treat any injuries from which Van Linn may have been suffering. By declaring this evidence unavailable to the State merely because it was of the same nature as separate, unlawfully obtained evidence, we would be placing the police in a worse position than they would otherwise occupy. Thus, the purpose of the exclusionary rule would not be effectuated by suppressing the evidence. *See **Murray***, 487 U.S. at 537.

¶21    Critically, in analyzing whether the independent source rule applies, we must consider whether law enforcement would have sought out the pertinent evidence even if the unlawful seizure had not occurred. ***Gant***, 365 Wis. 2d 510, ¶16. Despite Van Linn's arguments to the contrary, that is plainly the case here. It seems exceedingly likely the prosecutor would have sought out any evidence that could be used to establish the elements of the OWI charge for which Van Linn had already been arrested before the diagnostic blood test had even occurred. This motivation would have been particularly true regarding highly probative evidence like Van Linn's blood alcohol content.

¶22    Van Linn's argument is that the suppression of the law enforcement blood sample prompted the prosecutor to seek the diagnostic blood test evidence. But we fail to see why the sequencing of the State's subpoena request should

matter, especially under the facts here. When prior case law speaks of an unlawful search "prompting" a subsequent, lawful search, it is referring to the notion that the knowledge police gained from an illegal search cannot form the basis for a later, lawful request for that evidence. *See Murray*, 487 U.S. at 542; *Silverthorne Lumber Co.*, 251 U.S. at 392. Such prompting does not occur when the police seek different, lawfully obtained evidence that is otherwise known to be available to them. Indeed, the relevant case law validates untainted attempts to obtain even the *same* evidence that was the subject of an earlier, unlawful search. *See Murray*, 487 U.S. at 535-36 (involving evidence observed by police during an unlawful search of a warehouse but later lawfully seized); *Carroll*, 322 Wis. 2d 299, ¶¶6-11 (involving incriminating pictures on a cell phone that were unlawfully viewed by police prior to obtaining a warrant).

¶23   The only aspect of Van Linn's "prompting" argument that bears further scrutiny is his contention that the subpoena affidavit was tainted by the inclusion of the blood alcohol content derived from the unlawful law enforcement blood sample. But in the context of a warrant, when the affidavit supporting the application "contains both tainted and untainted evidence, the issued warrant is valid if the untainted evidence is sufficient to support a finding of probable cause to issue the warrant." *Carroll*, 322 Wis. 2d 299, ¶44. The subpoena affidavit detailed the law enforcement investigation of the crash, including the accident scene and discovery of an injured Van Linn who smelled of intoxicants and admitted to drinking "a couple of beers." As a result, there was probable cause to believe that Van Linn's medical treatment providers would have evidence concerning the degree of Van Linn's intoxication.

¶24   Additionally, we must consider whether the unlawful search influenced the decision to issue the subpoena. *See Gant*, 365 Wis. 2d 510, ¶16.

11

Here, it plainly did not, and Van Linn's reply brief concedes as much. As set forth in the subpoena affidavit, police reasonably suspected Van Linn of—and arrested him for—OWI even before law enforcement had any inkling of what a blood test would reveal. As a result of the foregoing, the circuit court properly held that the evidence derived from the diagnostic blood test and produced as a result of the subpoena is not subject to suppression.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.